IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

KELLY FARLEY

CRIMINAL CASE NO.

1:07-CR-196-BBM-RGV

## ORDER FOR SERVICE OF MAGISTRATE JUDGE'S FINAL REPORT, RECOMMENDATION, AND ORDER

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Criminal Rule 58.1.  Let the same be filed and a copy, with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within ten (10) days of receipt of this Order.  Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript of applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of

factual findings will be limited to a plain error review.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

Pursuant to Title 18, U.S.C. § 3161(h)(1)(F), **the above-referenced ten (10) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.**  The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this 5th day of December, 2007.


RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL CASE NO. |
| v. | 1:07-CR-196-BBM-RGV |
| KELLY FARLEY | |

## <u>MAGISTRATE JUDGE'S FINAL REPORT, RECOMMENDATION, AND ORDER ON DEFENDANT'S PRETRIAL MOTIONS</u>

Defendant Kelly Farley is charged in a two-count indictment with knowingly crossing a state line with intent to engage in a sexual act with a person who had not attained the age of 12 years in violation of 18 U.S.C. § 2241(c), and with using a facility and means of interstate commerce to knowingly attempt to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  [Doc. 8].  Farley has filed pretrial motions to dismiss the indictment, [Doc. 16], to suppress statements, [Doc. 17], and to suppress evidence, [Doc. 18].  Following an evidentiary hearing on August 20, 2007, on Farley's motions to suppress,[1] the government filed a post-

---

[1] <u>See</u> Doc. 31 for the transcript of the evidentiary hearing.  Citations to the evidentiary hearing transcript hereinafter will be referred to as "(Tr. at ___)."  In addition, the parties submitted exhibits which will be referred to as "(Gov. Ex. ___)" for the government's exhibits and "(Def. Ex. ___)" for Farley's exhibit.

hearing brief in opposition to Farley's motions, [Doc. 36], which Farley responded to on October 16, 2007, [Docs. 40 & 42].[2]  For the following reasons, the undersigned **RECOMMENDS** that Farley's motions be **DENIED**.

## I.  STATEMENT OF FACTS

On October 3, 2006, as part of an undercover investigation into child pornography and the sexual exploitation of children, Federal Bureau of Investigation ("FBI") Task Force Special Agent Joanne Southerland ("Agent Southerland"), posing as "Steph 30274," a 41 year-old single mother of a fictitious 10 year-old daughter named "Sydney," entered a Yahoo! chat room[3] called "Fetish

---

[2]  Farley also has filed a Motion to Supplement the Record, [Doc. 41], seeking to introduce as evidence in the suppression hearing a copy of his polygraph examination results from August 14, 2007, which the government opposes. [Doc. 43].  Farley seeks to introduce the polygraph results only to supplement the record of the suppression hearing, [Doc. 41 at 1; Doc. 44 at 1-2], but the polygraph results are not relevant to the motions to suppress evidence and statements addressed at the suppression hearing.  Nor are the polygraph results relevant to Farley's motion to dismiss the indictment.  Moreover, Farley's polygraph examination does not appear to satisfy the conditions for admission into evidence in this circuit.  United States v. Henderson, 409 F.3d 1293, 1301-02 (11th Cir. 2005) (citing United States v. Gilliard, 133 F.3d 809, 811-12 (11th Cir. 1998)).  Accordingly, it is hereby **ORDERED** that Farley's Motion to Supplement the Record, [Doc. 41], be **DENIED**.

[3]  Agent Southerland testified that an internet chat room is a place where people can discuss topics of common interest with others online.  (Tr. at 5-6).  She further explained that the Yahoo! internet website has thousands of chat rooms organized by topics similar to a library.  (Id.).  When an individual enters a certain chat room, his or her screen name will appear and notify everyone in that chat room that he or she has entered the room.  (Id. at 6).  Once in a chat room, any individual in that chat room can retrieve another's profile information by clicking on their

2

Number 14" dedicated to the discussion topic of incest. (Tr. at 4, 7, 19, 25). Upon entering this chat room, an individual using the screen name "kfcolonial2004," later identified as defendant Kelly Brenton Farley, initiated an instant messenger[4] chat with Agent Southerland after reviewing her online profile.[5] (Id. at 8, 19). During this first private chat, Farley introduced the topic of engaging in sexual activity with Agent Southerland's fictitious 10 year-old daughter.[6] (Id. at 10, 18, 21; Gov. Ex. 1). Farley also described how he had been sexually active with a 14 year-old girl for the past year. (Tr. at 10; Gov. Ex. 1).

Through numerous private discussions over the next seven months, Farley described in great detail how he wanted to engage in sexual activity with both Agent Southerland and her daughter. (Tr. at 11-14, 21; Gov. Ex. 1; Def. Ex. 1). Farley and Agent Southerland also exchanged photographs, and during one instant message session, Agent Southerland displayed a photograph of herself and an actual 9 year-

---

screen name. (Id. at 7-8, 19).

[4] Instant messaging allows individuals to engage in a real-time private discussion outside the presence of others in the chat room. (Tr. at 6).

[5] Agent Southerland was in Atlanta, Georgia during all of her communications with Farley who was located in Texas. (Tr. at 8-9).

[6] The specific facts and details related to all of Farley's communications with Agent Southerland are not discussed in this opinion as they are not relevant to the issues before the Court.

old girl. (Tr. at 12-13; Gov. Ex. 2). Farley also sent electronic communications to "Sydney." (Tr. at 14-15, 36-37; Gov. Ex. 9). In addition to the instant messenger chats and e-mails, Farley and Agent Southerland also communicated by telephone. (Tr. at 12). Farley also communicated with an FBI employee posing as 10 year-old "Sydney." (Id. at 14, 34).

Farley eventually advised Agent Southerland that he had arranged a business trip to Georgia. (Id. at 24). Farley agreed to meet Agent Southerland and her daughter on May 15, 2007, at an IHOP restaurant in Riverdale, Georgia. (Id. at 15-16). Farley advised Agent Southerland of his flight plans for May 15th, which the agents confirmed with the airlines. (Id. at 16, 26-28). In conversations with Agent Southerland leading up to the meeting date, Farley described in graphic detail how he wanted the sexual experience with Sydney to take place. (Id. at 14, 17). Farley also suggested that they give Sydney wine to relax her before engaging in sexual activity. (Id. at 14, 16).

In an e-mail to Agent Southerland on May 10, 2007, Farley told her that he would love to talk to "Sydney" again and expressed how excited he was to meet them. (Id. at 33-34; Gov Ex. 8). Farley also sent an e-mail to "Sydney" on May 14, 2007, the day prior to their planned meeting, stating "we will not doing [sic] anything that will hurt you or that you dont [sic] feel comfortable with. The idea is

4

for all of us to have a really good time together and that is is [sic] fun!!  I am sure that you have seen what a good time those folks have on the movies, that is how we will be."  (Tr. at 36-37; Gov. Ex. 9).  Agent Southerland testified that the reference to "movies" in the e-mail referred to suggestions Farley had made of showing "Sydney" pornographic movies.  (Tr. at 15).

On May 15, 2007, Farley arrived at Hartsfield-Jackson International Airport in Atlanta, Georgia, on an American Airlines flight from Texas as planned.  (Id. at 38). Special Agent Stephen E. Paganucci ("Agent Paganucci"), Agent John Robinson, and an Atlanta Police Department ("APD") Officer met Farley at his assigned seat on the airplane and, after confirming his identity, Agent Paganucci told Farley he was being detained and handcuffed him.  (Id. at 16, 28, 38-39, 55-57).  The agents removed Farley and his carry-on luggage from the plane, placed him in an APD patrol vehicle waiting near the jet-way, and transported him to an APD substation at the airport.  (Id. at 39-40, 56).

Agent Paganucci took Farley to a conference room at the APD substation where he removed the handcuffs from both of Farley's hands and handcuffed his left hand to a chair.  (Id. at 40, 58).  Agent Paganucci told Farley he had some questions for him, but he did not tell Farley what he was being charged with.  (Id. at 57, 59).  At an unspecified time after detaining Farley, Agent Paganucci told him

that "there was some FBI program that picks up certain words online like terrorist, threats, and things of that nature." (Id. at 58). Before questioning Farley, Agent Paganucci advised Farley of his Miranda[7] rights by reading the rights from an Advice of Rights and Waiver Form, which Farley initialed as having read. (Id. at 43-45, 60-61; Gov. Ex. 3). Farley indicated that he understood his rights and agreed to waive them by signing the waiver portion of the Advice of Rights and Waiver Form. (Tr. at 46; Gov. Ex. 3). The agents then proceeded to interview Farley at which time he made incriminating statements. (Tr. at 46). The agents did not make any threats or promises to induce Farley to waive his rights and agree to speak with them. (Id. at 42). Farley never indicated a desire to end the interview and never requested the presence of counsel. (Id. at 43).

Near the end of the interview, Agent Paganucci asked Farley for consent to search his laptop computer, his cellular phone, his Blackberry hand-held device, and his Yahoo! online account under screen name kfcolonial2004. (Id. at 46-47; Gov. Exs. 4-7). Farley consented and signed consent to search forms for each of the requested items. (Tr. at 48-51; Gov. Exs. 4-7). Prior to signing the consent to search forms, the agents did not make any threats or promises to induce Farley to consent to the searches. (Tr. at 48-50). In addition, Agent Paganucci advised Farley that his

---

[7] See Miranda v. Arizona, 384 U.S. 436 (1966).

consent was completely voluntary and that his cooperation would not provide him any benefit. (<u>Id.</u> at 42, 48). The agents concluded the interview after approximately one and a half hours. (<u>Id.</u> at 41).

## II. DISCUSSION

### A.   <u>Motion to Dismiss Indictment</u>

Farley contends that since there was no actual child victim involved in this case, it is legally impossible for him to attempt to commit the offenses charged in the instant indictment. [Doc. 16 at 3-4]. Farley further contends that 18 U.S.C. §§ 2241(c) and 2422(b) are unconstitutional as applied because they criminalize legitimate speech protected by the First Amendment. [<u>Id.</u> at 4-6].

#### 1.   *An actual minor victim is not required for 18 U.S.C. §§ 2422(b) and 2241(c) to apply.*

Count One of the instant indictment charges Farley with violating 18 U.S.C. § 2241(c). [Doc. 8]. Section 2241(c) makes it a federal crime for anyone to cross a state line "with intent to engage in a sexual act with a person who has not attained the age of 12 years." 18 U.S.C. § 2241(c). Count Two of the indictment charges Farley with violating 18 U.S.C. § 2422(b). [Doc. 8]. Section 2422(b) provides in relevant part:

> Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in

7

prostitution or any sexual activity for which any person can be charged with a criminal offense, or *attempts to do so*, shall be fined . . . and imprisoned . . . .

See 18 U.S.C. § 2422(b) (emphasis added).

Farley's legal impossibility argument with regard to § 2422(b) may be summarily denied because it is foreclosed by Eleventh Circuit precedent.[8]  See United States v. Bolen, 136 Fed. Appx. 325, 327-28 (11th Cir. 2005) (unpublished) (rejecting arguments that § 2422(b) does not prohibit an individual from arranging to have sex with a minor through communications with an adult intermediary or from arranging to have sex with a fictitious minor); United States v. Hornaday, 392 F.3d 1306, 1310 (11th Cir. 2004) (finding defendant's communications with parent, who turned out to be a law enforcement agent, over the internet regarding engaging in sexual activity with the parent's two children falls within the scope of § 2422(b) even though actual minor not involved); United States v. Murrell, 368 F.3d 1283, 1286-88 (11th Cir. 2004) (finding defendant guilty of § 2422(b) by arranging to have sex with minor through communications with an undercover officer posing as the "father" of a fictitious child, and taking substantial step toward intended goal, such as driving 200 miles for prearranged designation at motel); United States v. Root, 296 F.3d 1222, 1227-29 (11th Cir. 2002) (finding actual minor victim not required and

---

[8] Farley acknowledges that his argument is contrary to Eleventh Circuit precedent, but he raises the issue to preserve it.  [Doc. 16 at 3 n.2; Doc. 42 at 2].

defendant's belief minor is involved is sufficient to sustain attempt conviction under § 2422(b)). Other circuits have reached the same conclusion with regard to § 2422(b). See United States v. Helder, 452 F.3d 751, 756 (8th Cir. 2006) (finding actual minor victim not required for an attempt conviction under § 2422(b)); United States v. Meek, 366 F.3d 705, 717-20 (9th Cir. 2004) (actual minor victim not required, and defendant's subjective knowledge he is seeking sexual activity with a minor is sufficient to sustain attempt conviction under § 2422(b)); United States v. Farner, 251 F.3d 510, 512-13 (5th Cir. 2001) (legal impossibility is not a defense to attempted enticement of a minor for illegal sexual activity under § 2422(b)). See also United States v. Carter, No. 1:04-CR-05306, 2006 WL 997867, *3-4 (E.D. Cal. Apr. 17, 2006) (unpublished) (citing Murrell for its finding that actual minor not required in a case where defendant communicated with an adult intermediary undercover agent posing as a single mother of two young girls about engaging in sexual activity with the two girls, stating "[i]f a defendant could circumvent the statute merely by communicating with an adult intermediary to carry out his intended plan to sexually abuse minor children the statute would be rendered ineffective").

Farley's legal impossibility argument with regard to § 2241(c) likewise fails under Eleventh Circuit precedent, but it merits more discussion. As noted, § 2241(c) makes it a federal crime for anyone to cross a state line with the intent to engage in

9

a sexual act with a person under the age of 12 years.  See 18 U.S.C. § 2241(c).
Although the Eleventh Circuit has not yet addressed Farley's argument with respect
to § 2241(c), it has found that an actual minor victim is not required for a conviction
under a statute similar to § 2241(c).  Root, 296 F.3d at 1231 (addressing conviction
under 18 U.S.C. § 2423(b)).  See also United States v. Yokeley, No. 05-4661, 2007 WL
1958627, *4 (6th Cir. July 2, 2007) (noting that while § 2423(b) is one statute
defendant could have been charged under, § 2241(c) was more appropriate when
intended victim is a child under the age of 12 since  § 2423(b) refers only to minors
in general).

In Root, the defendant was convicted of violating § 2423(b), "which punishes
travel with intent to engage in a sexual act with a juvenile."  296 F.3d at 1231; see
also 18 U.S.C. § 2423.   Root had engaged in internet communication with an
undercover FBI agent posing as a minor prior to crossing state lines for the purpose
of engaging in a sexual act with the minor.  The defendant argued that an actual
person under the age of 18 was required as the object of the interstate travel.  Root,
296 F.3d at 1231.  The Eleventh Circuit rejected this contention and concluded that
the conviction turned on the illegal purpose for which the defendant traveled–
namely that he traveled across state lines for the purpose of engaging in sexual
activity with a person under 18 years.  Id. at 1231-32.

10

The reasoning in <u>Root</u> is applicable here.  Farley is charged with traveling across state lines with the intent to engage in sexual activities with a person under 12 years.  It is undisputed that he traveled across state lines.  At trial, the government will have to prove Farley's intent in traveling, but the existence of an actual minor victim is not necessary to show that Farley had the intent to engage in the acts made illegal by § 2241(c).  Thus, Farley's arguments fail.  <u>See</u> <u>United States v. Tykarsky</u>, 446 F.3d 458, 469 (3d Cir. 2006) (actual minor not required for a conviction under § 2423(b) for traveling for the purpose of engaging in illicit sexual activity with a minor).  Accordingly, based on the above-cited case law, Farley's arguments that both §§ 2422(b) and 2241(c) require the involvement of an actual minor are without merit.

### 2. *18 U.S.C. §§ 2422(b) and 2241(c) are not unconstitutional as they do not criminalize legitimate speech protected by the First Amendment.*

Farley also seeks dismissal of the indictment on the basis that §§ 2422(b) and 2241(c) are unconstitutional because they infringe on protected speech expressed to another adult under the First Amendment.  [Doc. 16 at 4-6; Doc. 42 at 2-3].  Again, Farley's argument with regard to § 2422(b) is foreclosed by Eleventh Circuit precedent.  In <u>Hornaday</u>, the Eleventh Circuit rejected as frivolous the defendant's argument that applying § 2422(b) to him was unconstitutional because it punished him for engaging in speech protected by the First Amendment.  392 F.3d at 1311.

11

The defendant in <u>Hornaday</u> was convicted of violating § 2422(b) for attempting to induce a minor for sex when he chatted on the internet with an undercover agent posing as a parent of fictitious children.  <u>Id.</u> at 1308.  In finding the defendant's First Amendment argument without merit, the Eleventh Circuit stated, "Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."  <u>Id.</u> at 1311. The circumstances in <u>Hornaday</u> are indistinguishable from the instant case in all relevant aspects, and the decision is therefore controlling.  <u>See also</u> <u>United States v. Panfil</u>, 338 F.3d 1299, 1301 (11th Cir. 2003) (finding defendant's reliance on <u>Reno v. ACLU</u>, 521 U.S. 844 (1997), misplaced as the language of § 2422(b) is clear and therefore not overbroad or vague).  In addition, other courts have also found First Amendment arguments with regard to § 2422(b) to be without merit.  <u>See</u> <u>Tykarsky</u>, 446 F.3d at 473 (finding § 2422(b) regulates only conduct not speech and stating that "[t]here is no First Amendment right to persuade minors to engage in illegal sex acts") (citations omitted); <u>Meek</u>, 366 F.3d at 721-22 (holding <u>Reno</u> is not controlling and finding no legitimate speech infringed upon by § 2422(b) because statute only criminalizes conduct); <u>United States v. Bailey</u>, 228 F.3d 637, 639 (6th Cir. 2000) ("[T]he Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts."); <u>Carter</u>, 2006 WL 997867, at *7

12

(rejecting defendant's argument that § 2422(b) infringes on First Amendment speech).

This Court likewise finds Farley's First Amendment argument with regard to § 2241(c) to be without merit. The statute does not criminalize any speech; it punishes the conduct of crossing state lines with the intent to engage in sexual acts with a minor. Cf. United States v. Han, 230 F.3d 560, 563 (2d Cir. 2000) (upholding constitutionality of § 2423(b), which is similar to § 2241(c), because it does not criminalize mere thought but only actions). Therefore, Farley's First Amendment argument with regard to § 2241(c) is frivolous. Because Farley has failed to raise any meritorious issue with regard to the instant indictment, the Court hereby **RECOMMENDS** that Farley's motion to dismiss the indictment, [Doc. 16], be **DENIED**.

B.   **Motions to Suppress Evidence and Statements**

Farley contends that he did not voluntarily, knowingly, and intelligently waive his Miranda rights and argues that all his incriminating statements are due to be suppressed. [Doc. 17; Doc. 40 at 7-12]. Farley also contends that the warrantless search of his laptop computer, cellular phone, Blackberry hand-held device, and Yahoo! online account violated his Fourth Amendment rights and

therefore any evidence obtained therefrom is due to be suppressed.  [Doc. 18; Doc. 40 at 13].

     **1.**     ***Farley's incriminating statements are not due to be suppressed.***

After Farley was detained and taken to the APD substation, Agent Paganucci advised him of his <u>Miranda</u> rights by reading the rights from an Advice of Rights and Waiver Form.  (Tr. at 43-45, 60-61; Gov. Ex. 3).  Farley acknowledged that he understood his rights, initialed each of the seven rights on the form, agreed to waive them by signing the waiver portion of the form, and indicated that he was willing to speak with Agent Paganucci.  (Tr. at 43-46, 60-61; Gov. Ex. 3).  After Farley waived his rights, Agent Paganucci proceeded to question Farley who made certain incriminating statements which he now moves to suppress.  (Tr. at 46).  There is no question that Farley was in custody at the time he made these statements.  It is also undisputed that Farley was subjected to an "interrogation" by Agent Paganucci within the meaning of <u>Miranda</u> after being advised of his rights and agreeing to waive them.  Thus, the question is whether Farley voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights.

The Government bears the burden of proving by a preponderance of evidence that Farley validly waived his <u>Miranda</u> rights.  <u>United States v. Chirinos</u>, 112 F.3d 1089, 1102 (11th Cir. 1997).  <u>See also</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986).

In Miranda, the Supreme Court acknowledged that custodial interrogations, by their very nature, create "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467. Therefore, to address this inherent compulsion and protect a suspect's Fifth Amendment privilege against self-incrimination, Miranda established certain procedures officers must follow. Specifically, prior to the initiation of questioning, officers must fully advise the suspect of the government's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to "have counsel present . . . if [he] so desires." Id. at 467-70. Miranda further requires that law enforcement respect the suspect's decision to exercise his rights as outlined in the warnings. "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Id. at 473-74. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Id. at 474.

A defendant may waive his rights if the waiver is made voluntarily, knowingly and intelligently. Id. at 444. This inquiry has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation'

15

reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

United States v. Patterson, No. 1:06-CR-500-1-TWT, 2007 WL 2331080, *3 (N.D. Ga. Aug. 10, 2007) (quoting United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995)).

See also Moran v. Burbine, 475 U.S. 412, 421 (1986); Edwards v. Arizona, 451 U.S. 477, 482 (1981); Fare v. Michael C., 442 U.S. 707, 725 (1979); Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). "No single factor is necessarily determinative of the issue whether a defendant knowingly and intelligently waived his rights but the court must engage in a fact-specific inquiry based on all of the circumstances." Patterson, 2007 WL 2331080, at *3. However, an expressed oral or written waiver of Miranda is strong proof of validity of waiver. United States v. Stephens, 202 F. Supp. 2d 1361, 1370 (N.D. Ga. 2002). To find a waiver involuntary, "coercive police activity is a necessary predicate." Connelly, 479 U.S. at 167.

Farley contends that his waiver was not voluntary because Agent Paganucci used trickery and deception by advising him that he was wanted for questioning and telling him that there was an FBI program that picked up certain words online such as "terrorist," "threats," and "things of that nature," while never informing him of the actual charges against him. [Doc. 40 at 9]. Farley further contends that the agents also deceived him by making him think he would be able to make his

business meeting scheduled for the next morning by offering to copy for him any files he needed from his computer onto a computer disk and by advising him that the agents were waiting on a fax from their Dallas office.  [Id.].  Farley argues that his waiver was not voluntary, knowing, and intelligent because "he thought he was helping the government in a matter of national security."  [Id.].

"A suspect's waiver of *Miranda* rights is not invalid merely because police interrogators did not advise him of the subject matter of the upcoming interrogation."  Barnes v. Johnson, 160 F.3d 218, 223 (5th Cir. 1998).  In fact, "[a]n officer may change the topic of interrogation without notice because a 'suspect's awareness of all the possible subjects of questioning in advance of  interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege.'"  United States v. Syslo, 303 F.3d 860, 865-66 (8th Cir. 2002) (quoting Colorado v. Spring, 479 U.S. 564, 577 (1987)).  "[A] valid waiver does not require that an individual be informed of all information 'useful' in making his decision or all information that 'might . . . affec[t] his decision to confess.'"  Spring, 479 U.S. at 576 (quoting Moran, 475 U.S. at 422) (alterations in original).

In Miranda, the Supreme Court held that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant

17

did not voluntarily waive his privilege."  384 U.S. at 476.  However, the Supreme

Court has left open the question of whether an affirmative misrepresentation by law

enforcement agents as to the scope of an interrogation would invalidate a waiver of

Miranda rights.  Spring, 479 U.S. at 576 n.8; United States v. Maney, No. 04-CR-106A,

2006 WL 3780813, at *10 (W.D.N.Y. Dec. 21, 2006) ("no caselaw supports finding

involuntariness based on an affirmative misrepresentation by law enforcement as

to the purpose of the suspect's questioning"); Ortiz v. Kelly, 687 F. Supp. 64, 65

(E.D.N.Y. 1988).

    The Eleventh Circuit and other courts have held that "[t]rickery does not

make it impossible *per se* to find that a defendant voluntarily waived his rights."

United States v. Anderson, 929 F.2d 96, 100 (2d Cir. 1991); United States v.

Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984) ("the police's use of a trick

alone will not render a confession involuntary.").  Instead, an allegation that police

deception or trickery invalidated a waiver of rights must be evaluated within the

totality of the circumstances of the interrogation.  United States v. Middleton, No.

06-11622, 2007 WL 1720469, *5 (11th Cir. June 15, 2007) (unpublished).  See also

United States v. Grossman, 233 Fed. Appx. 963, 967 (11th Cir. 2007) (unpublished).

    "[C]ourts have found waivers to be voluntary even in cases where officers

employed deceitful tactics."  Soffar v. Cockrell, 300 F.3d 588, 596 (5th Cir. 2002).  See

18

Spring, 479 U.S. at 575-77  (holding waiver voluntary despite failure to inform suspect of potential subjects of interrogation); United States v. Tapp, 812 F.2d 177, 179 (5th Cir. 1987) (holding waiver voluntary even though officers failed to tell defendant he was target of investigation).  "[T]rickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" Soffar, 300 F.3d at 596 (quoting Moran, 475 U.S. at 424).  "Of course, trickery can sink to the level of coercion, but this is a relatively rare phenomenon."  United States v. Flemmi, 225 F.3d 78, 91 n.5 (1st Cir. 2000).

Cases where police trickery has caused a confession to be involuntary have involved "other aggravating circumstances as well." Castaneda-Castaneda, 729 F.2d at 1363.  For example, in Lynumn v. Illinois, 372 U.S. 528, 534-35 (1963), the Supreme Court held that a confession was involuntary where the police falsely told a female suspect that she was in jeopardy of losing welfare benefits and custody of her children if she did not cooperate, but offered to recommend leniency if she would confess.  Similarly, in Spano v. New York, 360 U.S. 315, 323 (1959), the Court held that a misrepresentation that a suspect's friend would lose his job as a police officer if the suspect did not cooperate rendered the suspect's statement involuntary.  Likewise, in Hart v. Attorney Gen. of the State of Fla., 323 F.3d 884, 894-895 (11th

Cir. 2003), the agent's comments to the defendant that a defense attorney would prevent him from answering questions and that "honesty wouldn't hurt him" contradicted the Miranda warnings and caused the defendant to "not truly understand the nature of his right against self-incrimination or the consequences that would result from waiving it."

In this case, Farley asserts that Agent Paganucci presented the Advice of Rights and Waiver Form to him after telling him that he was wanted for questioning, that there was some issue with certain words like "terrorist" and "threats" being used online, and that they had some questions for him and would be done in about forty-five minutes, [Doc. 40 at 7], but the record does not establish this precise sequence of events. Agent Paganucci acknowledged on cross-examination that it was possible he told Farley he was wanted for questioning when he handcuffed him on the plane, and he confirmed that he did not tell Farley what he was being charged with at the APD substation. (Tr. at 57). The record does not reflect the context or timing of Agent Paganucci's comment that "there was some FBI program that picks up certain words online like terrorist, threats and things of that nature." (Id. at 58). Nor does the record reflect when Agent Paganucci told Farley he had some questions for him and that they would be done in approximately forty-

20

five minutes.[9]  (Id. at 59).  Agent Paganucci testified on direct that he advised Farley of his rights prior to taking a statement from him, (Id. at 43), but the cross-examination and redirect did not establish the precise timing of the advice of rights vis-a-vis the alleged misrepresentations.  In any event, the Court must evaluate the totality of the circumstances of the interrogation, Hart, 323 F.3d at 893 n.18, and even accepting Farley's argument regarding the sequence of events, the undersigned finds that his waiver was voluntary, knowing, and intelligent.

In United States v. Shafer, 384 F. Supp. 491, 494 (N.D. Ohio 1974), the court addressed a similar situation in which defendants moved to suppress their statements contending that "the Miranda warnings rendered by the law enforcement officers were initiated by alleged misrepresentations as to the scope of their investigation."  The court concluded that even if such misrepresentations were made, the "compelling pressures" that concerned the Supreme Court in Miranda were absent, and the careful giving of the warnings alone was sufficient to protect the Fifth Amendment privilege of the defendants.  Id.  The court explained, "There are few more sobering experiences than being asked to read and execute a waiver of one's constitutional rights prior to questioning by agents of the Federal Bureau

_____

[9] The record is clear, however, that Agent Paganucci's statement that they were  waiting on a fax from the Dallas office and his offer to copy files from Farley's laptop computer occurred during the interview.  (Tr. at 59).

of Investigation.  To argue that the defendants gave so much weight to the oral remarks of the agents so as to overcome the plain and unmistakable meaning of the waiver requires convoluted reasoning."  Id. at 494-95.

In Middleton, the Eleventh Circuit recently reached a similar conclusion in rejecting the defendant's argument that his statement was involuntary "because there was some trickery involved in eliciting it."  2007 WL 1720469 at *5.  In that case, the defendant made certain admissions "after being told that the police had evidence that it did not actually have," and the Eleventh Circuit held that "this single interrogation trick – in the absence of any other aggravating circumstances suggesting coercion on the part of [the investigator] – does not automatically render [the defendant's] waiver involuntary."  Id.  The Court added, "This is especially so where the totality of the evidence otherwise establishes that the statement was voluntarily made, free from any coercion."  Id.  Since the defendant was read his Miranda rights and was aware of his rights and the consequences of the decision to abandon them, the totality of the circumstances indicated that the defendant knowingly and voluntarily waived his Miranda rights.  Id.

The totality of the circumstances here indicate that Farley voluntarily, knowingly, and intelligently waived his rights.  Farley was read his Miranda rights and was provided the opportunity to read them himself.  (Tr. at 43-44).  Agent

22

Paganucci clearly advised Farley of his right to remain silent and to have counsel present, and warned him that anything he said could be used against him in court. (Id. at 45; Gov. Ex. 3).  Farley then waived those rights by signing a written waiver and proceeded to make incriminating statements.  (Tr. at 44-46, 60-61; Gov. Ex. 3). There is no evidence that the agents threatened Farley or made any promises or inducements to obtain his waiver.  Farley's mental and physical status at the time of the interrogation did not result in any misunderstanding of his rights.  Farley did not ask for clarification, stop the interview, or otherwise indicate in any way that he did not understand his rights or the consequences of his waiver.  (Tr. at 42-46).

        This case does not present the type of "aggravating circumstances" where involuntariness has been found.  Middleton, 2007 WL 1720469 at *5.  The alleged misrepresentations that Farley was wanted for questioning, that there was a FBI program that picked up certain words online like "terrorist" and "threats," that they may be finished with the questioning in forty-five minutes, and that the agents were waiting on a fax from their Dallas office did not contradict the Miranda warnings and did not deprive Farley "of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them."  Moran, 475 U.S. at 424.  Agent Paganucci was not required to advise Farley of the subject of the interrogation, Johnson, 160 F.3d at 223, and the record does not establish that Agent

23

Paganucci affirmatively misrepresented the scope of the interrogation. While Agent Paganucci told Farley at some unspecified time after detaining him that there was a program that picked up certain words online "like terrorist, threats and things of that nature," (Tr. at 58), the line of questioning clearly established that the interrogation had to do with traveling to have sex with a minor. (Tr. at 60). The fact that Agent Paganucci may have changed the topic of the interrogation did not undermine Farley's free choice to waive his rights. See Spring, 479 U.S. at 577. "A criminal suspect is not required to know and understand every possible consequence of a waiver for it to be knowingly and intelligently made." United States v. Gaddy, 894 F.2d 1307, 1312 (11th Cir. 1990). The totality of the circumstances surrounding the interrogation demonstrate that Farley was clearly advised of his rights and that anything he said could be used against him in court and that he voluntarily, knowingly, and intelligently waived his Miranda rights. Therefore, the Court **RECOMMENDS** that Farley's motion to suppress statements, [Doc. 17], be **DENIED**.

> **2.** *Evidence obtained from warrantless searches not due to be suppressed.*

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'"

24

Schneckloth, 412 U.S. at 219 (quoting Katz v. United States, 389 U.S. 347, 357 (1967) & Coolidge v. New Hampshire, 403 U.S. 443, 454-455 (1971)).   "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent."   United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989).

"In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice."   Id. at 360.   "The principles for determining the voluntariness of consent for a search are the same as those for determining the voluntariness of a confession– i.e. 'whether consent is voluntary turns on questions of fact, determinable from the totality of the circumstances.'"   United States v. Boskic, No. 04-10298-DPW, 2006 WL 1540488, *19 (D. Mass. June 2, 2006).   See also United States v. Tovar-Rico, 61 F.3d 1529, 1535 (11th Cir. 1995) (voluntariness of consent is judged in light of the totality of the circumstances).   Relevant factors include the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found.   United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001).   Ultimately, the burden is on the government to prove that the consent given was voluntary.   United States v. Bentley, 151 Fed.

25

Appx. 824, 827 (11th Cir. 2005) (unpublished) (<u>citing</u> <u>United States v. Chemaly</u>, 741 F.2d 1346, 1352 (11th Cir. 1984)); <u>Tovar-Rico</u>, 61 F.3d at 1536 (<u>citing</u> <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983)); <u>United States v. Blake</u>, 888 F.2d 795, 798 (11th Cir. 1989).

Farley signed consent to search forms for his laptop computer, cellular phone, Blackberry device, and Yahoo! account, but he contends that the alleged misrepresentations Agent Paganucci made rendered his consent involuntary, and, alternatively, that his consent was given in acquiescence to a show of lawful authority. [Doc. 40 at 13]. However, considering the totality of the circumstances, the Court finds that Farley voluntarily consented to a search of his laptop computer, cellular phone, Blackberry device, and Yahoo! account when he signed the consent to search forms for each item.

Consent was requested near the end of the interview in the direct presence of only one other officer, and neither of the officers had their weapons drawn or made any show of force. (Tr. at 40-41, 46-48). Although Farley was in custody and had one hand handcuffed to the chair while his writing hand was free, there is no evidence that the agents coerced Farley into consenting to the searches. <u>See</u> <u>United States v. Villanueva-Fabela</u>, 202 Fed. Appx. 421, 427 (11th Cir. 2006) (unpublished) (holding defendant capable of providing voluntary consent despite handcuffs);

26

Garcia, 890 F.2d at 362 (holding consent voluntarily given even though the defendant had been arrested and was handcuffed at the time he gave consent).

The alleged misrepresentations did not affect the voluntariness of Farley's consent. Farley asserts that the misrepresentations occurred at the outset of the interview, before he was advised of his Miranda rights. [Doc. 40 at 7]. However, Farley was asked for consent to search the items near the end of the interview, (Tr. at 47), after the line of questioning had clearly established that it had to do with traveling to have sex with a minor. (Tr. at 60). Hence, notwithstanding any earlier misrepresentations, Farley was well aware of the scope of the investigation at the time he signed the four separate consent to search forms.

For similar reasons, the record does not support Farley's claim that he simply acquiesced to a show of lawful authority in a matter of national security. Since Agent Paganucci requested the consent near the end of the interview, it was clear it did not pertain to a matter of national security. Farley was not threatened with a search warrant if he refused consent or promised anything if he granted consent. (Id. at 48-50). In fact, Agent Paganucci testified that he specifically advised Farley that his consent was completely voluntary and that his cooperation would not provide him any benefit. (Id. at 42, 48).

27

In their totality, the circumstances presented in this case are less coercive than circumstances in which courts have held consent was voluntary notwithstanding misrepresentations by the investigating agents. See, e.g., United States v. Romero, No. 06-3092, 2007 WL 2694242, *8 (10th Cir. Sep. 11, 2007) (consent still voluntary where defendant was in custody, in handcuffs, had been drinking heavily prior to incident, and was allegedly deceived by officer as to the scope of the search finding that alleged deceit was not "the kind of deceit that would have the capacity on these facts to erode the strong foundation of [defendant's] otherwise voluntary consent"); United States v. Andrews, 746 F.2d 247, 250 (5th Cir. 1984), overruled on other grounds, United States v. Hurtado, 905 F.2d 74 (5th Cir. 1990), (consent voluntary despite agent's misrepresentations that he wanted to see defendant's guns because defendant fit the description of a robbery suspect when in fact he wanted to see the guns in order to charge the defendant with illegal possession of firearms by a felon); Boskic, 2006 WL 1540488, at *16-19 (finding consent to search voluntary despite deception and misrepresentations as to the true nature of the investigation where agents staged an interview to question defendant about his application for travel documents when the agents' real intentions were to question him about possible immigration fraud and his involvement in war crimes); United States v. Jelks, 273 F. Supp. 2d 280, 291 (W.D.N.Y. 2003) (third party daughter's consent to search

28

defendant's bedroom voluntary even where parole officer misrepresented authority to search); United States v. Kruger, 151 F. Supp. 2d 86, 96 (D. Me. 2001) (consent voluntary despite officer's oral misrepresentation as to the purpose of the search). Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that Farley's motion to suppress evidence, [Doc. 18], be **DENIED**.

### III. CONCLUSION

For the foregoing reasons and cited authority, the undersigned Magistrate Judge **ORDERS** that Farley's Motion to Supplement the Record, [Doc. 41], be **DENIED** and **RECOMMENDS** that Farley's motion to dismiss, [Doc. 16], and his motions to suppress statements and evidence, [Docs. 17 & 18], be **DENIED**.

There are no other pending matters before the undersigned, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 5th day of December, 2007.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE